# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAREN L. RYAN,
　　　　　*Plaintiff-Appellant,*

v.

COMMISSIONER OF SOCIAL SECURITY,
　　　　　*Defendant-Appellee.*

No. 06-15291

D.C. No.
CV-03-02657-
DFL/CMK

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Argued and Submitted
December 5, 2007—San Francisco, California

Filed June 18, 2008

Before: Betty B. Fletcher, William C. Canby, Jr., and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge B. Fletcher;
Dissent by Judge Rawlinson

## COUNSEL

Harvey P. Sackett, Esq., Attorney at Law, San Jose, California, for the plaintiff-appellant.

John C. Cusker, United States Attorney, Office of the General Counsel Social Security Administration, San Francisco, California, for the defendant-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

Plaintiff-Appellant Karen L. Ryan appeals the district court's order granting summary judgment in favor of the Defendant-Appellee, upholding the Commissioner of Social Security's decision denying her application for Title II disability benefits. The Administrative Law Judge ("ALJ") did not give full weight to the opinions of two examining psychologists, characterizing their opinions as too heavily based on Ryan's "subjective complaints," and as being inconsistent with the records of Ryan's treating physician, a family practitioner. There was no inconsistency. The records of Ryan's treating physician, if anything, supported the examining psychologist's assessment that Ryan was incapable of maintaining a regular work schedule. Because substantial evidence does not support the ALJ's denial of disability benefits, we reverse.

## I.  BACKGROUND

### A.  The claimant's medical history.

Prior to filing for disability, Ryan worked for several years as a cashier and attendant at a garbage transfer station. She was placed on administrative leave in October 1999 after failing a random drug test and was ultimately terminated in late 1999. After she was fired, in December 1999 Ryan began to complain to her treating physician, family practitioner Dr. Neva Monigatti-Lake, that she was suffering "feelings of immobility, panic attacks, [and] crying spells." Dr. Monigatti-Lake's notes from that early December visit indicated an assessment of "anxiety disorder," and she increased Ryan's dosage of anti-depressants. When Ryan visited Dr. Monigatti-Lake a week later, she continued to assess her with "anxiety disorder, improving" and "depression, improving." On Ryan's next visit to Dr. Monigatti-Lake on March 1, 2000, the diagnosis was still "anxiety disorder," with no indication that Ryan had improved. Dr. Monigatti-Lake's observation notes indicated that during the March 1 visit Ryan was "coherent but very agitated. Rapid speaking and hand movements." Those symptoms persisted. When Ryan visited Dr. Monigatti-Lake on March 15, 2000, she noted again that Ryan was "very agitated but coherent," diagnosed anxiety disorder, and referred Ryan to counseling. When Dr. Monigatti-Lake saw Ryan again on April 4, 2000, she continued to diagnose anxiety disorder and noted rapid speech. Dr. Monigatti-Lake referred Ryan to the Department of Social Services on May 2, 2000 and enclosed her treatment records.

Ryan underwent a comprehensive psychiatric evaluation by Dr. Rajinder Randhawa on May 27, 2000. Dr. Randhawa observed that Ryan was "very distraught, edgy, nervous, shaky, and keeps shaking her legs throughout the evaluation. She appears to be somewhat anxious. . . . She speaks in a very rapid manner at times. She is very repetitive and circumstantial and is difficult to redirect." Dr. Randhawa diagnosed

Ryan with anxiety disorder and depression. Although Dr. Randhawa's prognosis was that Ryan was "treatable" and "likely to improve," the clinical notes also indicated that Ryan "continues to experience significant anxiety and continuing depression." Dr. Randhawa's functional assessment was that Ryan "would not be able to maintain regular attendance in the work place due to extreme anxiety and continuing depression, especially when faced in a work like situation . . . . She would not be able to complete a normal workday/workweek without interruptions from her psychiatric condition at present. She is not likely to deal with the usual stressors in a competitive work place." Dr. Randhawa predicted that Ryan could improve and return to work with "skilled psychiatric treatment with adequate psychiatric medication," but the assessment as of May 27 was that Ryan was incapable of maintaining a regular work schedule.

Ryan's treatment records were subsequently reviewed by two non-examining physicians, Drs. Harman and Harrison. On June 30, 2000, after completing check-boxes on a standardized form, Dr. Harman opined without elaboration that "with continued [treatment] anticipate able to do complex in low public with moderate impairments in ability to sustain [concentration and attention] [persistence and pace] and ability to complete regular workweek without interruption from her [psychological symptoms]." Dr Harrison affirmed Dr. Harman's opinion without comment on October 12, 2000. Drs. Harman and Harrison, however, never examined Ryan or reviewed her records after this assessment.[1]

---

[1] Ryan, meanwhile, continued to see Dr. Monigatti-Lake for various physical ailments. In a June 14, 2000 follow-up visit from knee surgery, Dr. Monigatti-Lake noted that Ryan still had "quite a bit of anxiety" and noted "anxiety disorder, improving." Ryan also saw an internist, Dr. Julian R. Espino, on December 2, 2000. Dr. Espino's examination was primarily physical, although he included a diagnosis of "anxiety disorder" and observed that Ryan "clearly needs to be on her medication for anxiety."

Ryan continued to see Dr. Monigatti-Lake with regularity. On January 16, 2001, Dr. Monigatti-Lake observed that Ryan was calmer than normal, but continued to diagnose anxiety disorder. On February 6, 2001, Dr. Monigatti-Lake observed that Ryan was "slightly less anxious," but again diagnosed "anxiety disorder, slowly improving." On her next visit to Dr. Monigatti-Lake, on September 25, 2001, the diagnosis was "chronic depression and anxiety," with no notation that the condition was improving. The last notation in Dr. Monigatti-Lake's records regarding Ryan's mental health came on June 13, 2002, when Monigatti-Lake noted that Ryan was still suffering from occasional panic attacks.

The final psychological examination in the record was conducted on January 6, 2003 by Dr. Douglas R. Crisp, a doctor with the Nevada County Behavioral Health Department. Dr. Crisp observed that Ryan was "extremely anxious, hyperventilating, [and] making a lot of grunting noises." Dr. Crisp recorded Ryan's description of her daily affairs, noting that she rarely left the small one-room shack where she lives unless to buy food. Dr. Crisp noted that Ryan "talked nonstop from the time she sat down until she left. . . . Affect was quite constricted with some lability, though, due to the anxiety." Dr. Crisp's ultimate diagnosis was "major depression with agoraphobia [and] anxiety."

## B.   Procedural history.

Ryan filed for Title II disability benefits on April 26, 2000. After an initial hearing, Ryan was denied benefits in a March 21, 2002 decision. The Appeals Council remanded for further vocational evidence and to allow Ryan to present additional medical evidence. On January 16, 2003, a supplemental hearing was held; Ryan testified, as did a vocational expert proffered by the Agency.

At the hearing before the ALJ, Ryan testified that she had only done laundry twice in the previous year. She cooked

only one meal a day and cleaned her home no more than once a month. Ryan testified that she had, essentially, no outside activities beyond her daily subsistence living and watching television. As to her mental condition, Ryan testified: "I have a very difficult time in concentrating and making decisions, or I don't remember very well. I get very confused and I have trouble understanding instructions. It's almost like the dots don't quite connect." Ryan testified that she was taking prescribed medication for depression and anxiety, but that her "anxiety is very hard to control. I've had many episodes of panic attacks." She testified that since the 2002 hearing, her depression had gotten worse.

The only other witness to testify was the Agency's vocational expert, Susan C. Clavel. In response to hypotheticals from the ALJ, Clavel testified that there were more than a million jobs in the national economy that required the ability to lift "40 pounds, no other physical restrictions, [and] only occasional contact with employees and supervisors and no public contact." On cross-examination, however, Clavel testified that if a person were unable to maintain regular attendance in the workplace due to anxiety, or unable to complete a normal workday or workweek without interruption from a psychiatric condition, that there were no jobs in the national economy that would accommodate those restrictions.

On May 17, 2003 the ALJ issued his written decision. Although he acknowledged that the "record supports a determination that the claimant has been limited as a result of severe anxiety and depressive disorder since the alleged onset date," he nonetheless did not accord full weight to the testimony of Dr. Randhawa or the most recent psychological examination in the record, Dr. Crisp's. Specifically, he rejected Dr. Randhawa's assessment that Ryan would have difficulty maintaining a regular work schedule due to her anxiety and depression. The ALJ reasoned that Dr. Randhawa's evaluation was "based more upon the claimant's subjective complaints which are not fully supported in the record. The

undersigned has reviewed in detail the claimant's records from her treating source, Dr. Monigatti-Lake, and while this physician has noted ongoing symptoms of anxiety and depressive symptoms, the claimant has not complained to the same degree as reported to Dr. Randawa [sic]." The ALJ likewise concluded that the treating records did not support Dr. Crisp's agoraphobia and major depression diagnoses. The ALJ thus found that Ryan could perform work "with little or no anxiety" so long as she had only occasional contact with peers and no contact with the public, a finding he described as "consistent with" the opinion of the non-examining state physicians who reviewed Ryan's records in June, 2000 and October, 2000. Ryan sought review in the district court, and on cross-motions for summary judgment, the court affirmed. The district court adopted the ALJ's rationale for rejecting the testimony of Dr. Randhawa. This appeal followed.

## II. STANDARD OF REVIEW

We review the district court's decision in a social security case *de novo*. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Social Security Administration's disability determination should be upheld unless it is based on legal error or is not supported by substantial evidence. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch*, 400 F.3d at 679 (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.' " *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In conjunction with the relevant regulations, we have also developed standards that guide our analysis of an ALJ's weighing of medical evidence. *See* 20 C.F.R. § 404.1527. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Finally, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Lester*, 81 F.3d at 830.

## III.  DISCUSSION

Ryan argues that the ALJ erred by improperly rejecting the opinion of Dr. Randhawa, an examining physician.[2] Dr. Randhawa opined that Ryan would be unable to complete a regular work week due to her mental impairments. The ALJ's rejection of this testimony led to his determination at step five of the sequential evaluation that Ryan was capable of performing work other than her past relevant work.[3] Substantial

---

[2]We reject the Agency's argument that this issue was not presented to the district court. Both parties briefed the ALJ's weighing of the medical evidence in the district court. The district court's summary judgment order quoted, in full, the ALJ's decision related to the medical evidence and agreed with the ALJ's summary of that evidence. The issue is properly before us. *Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 469 (2000) ("[T]his principle [of preserving issues] does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue.").

[3]The guidelines direct an ALJ to review a disability claim using a five-step sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

(i)  At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

evidence does not support the ALJ's decision. The ALJ proffered two reasons for rejecting Dr. Randhawa's opinion: (1) it was based too heavily on Ryan's "subjective complaints" and (2) it was not supported by the records of Ryan's treating physician Dr. Monigatti-Lake. Neither is a "clear and convincing reason" supported by substantial evidence necessary to reject the testimony of an examining doctor. *Bayliss*, 427 F.3d at 1216.

[1] First, Dr. Randhawa's comprehensive psychiatric evaluation was not based on Ryan's subjective complaints. Dr. Randhawa did, unsurprisingly, record in a section of his evaluation entitled "History of Present Illness," the symptoms relayed to him by Ryan, including Ryan's inability to interact with others or make decisions without experiencing significant anxiety. But in the "Mental Status Examination" portion of the exam he also recorded several of his own clinical

---

(ii)   At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii)   At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv)   At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v)   At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

observations of Ryan: "Behavior and mannerisms are somewhat odd. She has rapid speech. . . . She is easily agitated and appears to be very angry." Randhawa further observed Ryan's affect as "anxious, distraught, nervous, shaky, and edgy." An ALJ may reject an examining physician's opinion if it is contradicted by clinical evidence. *Bayliss*, 427 F.3d at 1216. But an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) ("In sum, the ALJ appears to have relied on her doubt's about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable."). There is nothing in the record to suggest that Dr. Randhawa disbelieved Ryan's description of her symptoms, or that Dr. Randhawa relied on those descriptions more heavily than his own clinical observations in reaching the conclusion that Ryan was incapable of maintaining a regular work schedule. *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999) (substantial evidence did not support ALJ's finding that examining psychologists took claimant's "statements at face value" where psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive").

**[2]** Second, the purported inconsistency between Dr. Randhawa's opinion and Dr. Monigatti-Lake's records is also not a clear and convincing reason supported by substantial evidence sufficient to discredit Dr. Randhawa's assessment. The ALJ explained that while "[Dr. Monigatti-Lake] has noted ongoing symptoms of anxiety and depressive symptoms, the claimant has not complained to the same degree of symptoms reported to Dr. Randawa [sic]." But Ryan consistently complained of and Dr. Monigatti-Lake observed—even when Ryan was seeing Dr. Monigatti-Lake for problems unconnected to her anxiety and depression—symptoms consistent

with those reported to and by Dr. Randhawa. In five of the six visits with Dr. Monigatti-Lake that preceded her assessment by Dr. Randhawa, she was diagnosed by Dr. Monigatti-Lake with either "anxiety disorder," "depression," or both. During those visits she complained of: "feelings of immobility, panic attacks, crying spells" (December 14, 1999); an inability to "concentrate very well" (December 21, 1999); was observed as having "[r]apid speaking and hand movements" (March 1, 2000); described as "very agitated but coherent" (March 15, 2000); and "rapidly speaking" (April 4, 2000).[4] Although Ryan certainly described her symptoms in more detail during her comprehensive psychological evaluation than she did in regular visits to her family doctor, that does not render Dr. Randhawa's opinion inconsistent with Dr. Monigatti-Lake's.[5] *Regennitter*, 166 F.3d at 1299 ("Nothing in [one examining doctor's report] rules out [another examining doctor's] more extensive findings.") (error under either "clear and convincing" or "specific and legitimate reasons" standards to reject an examining psychologist's report on the grounds that it contradicted a less extensive report); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions."). Nor are the references in Dr. Monigatti-Lake's notes that Ryan's anxiety and depression were "improving" sufficient to undermine the repeated diagnosis of those conditions, or Dr. Randhawa's more detailed report. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.

---

[4]Ryan continued to report, and Dr. Monigatti-Lake continued to observe, similar symptoms after her May 27, 2000 assessment with Dr. Randhawa. Although in January and February of 2001 Dr. Monigatti-Lake's notes indicate that Ryan's anxiety was improving, by September 25, 2001—the last time her notes diagnose a mental disorder—Dr. Monigatti-Lake diagnosed "chronic depression and anxiety."

[5]Moreover, Dr. Randhawa explicitly took account of Dr. Monigatti-Lake's treatment history in making his diagnosis, noting that Ryan's extreme anxiety and depression continued, "despite the treatment she receives from her primary care physician."

2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").[6]

[3] It is for these reasons that the ALJ also erred by discrediting the most recent mental health assessment by Dr. Crisp, who diagnosed Ryan with major depression and agoraphobia in January, 2003. This diagnosis is not at odds with Dr. Monigatti-Lake's treating records that characterize Ryan as suffering from chronic depression and anxiety in the visit closest in time to Dr. Crisp's diagnosis. *Regennitter*, 166 F.3d at 1299; *see also cf. Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) ("Where a claimant's condition is progressively deteriorating, the most recent medical report is the most probative."). And like Dr. Randhawa, Dr. Crisp's diagnosis also relied on his clinical observations of Ryan.

---

[6]The dissent's observation that the majority "turns our Social Security jurisprudence on its head," is premised on its belief that the treating physician's clinical finding and the findings of the examining physicians and their conclusions are at odds—i.e., that the treating physician does not find Ryan disabled while the examining physicians do. Dissent at 7054. This is simply not true.

We agree, of course, with the dissent's observation that a treating physician's opinion is generally accorded more weight than the opinion of an examining or non-examining physician. *Lester*, 81 F.3d at 830. But that principle does not empower an ALJ to manufacture a conflict between a treating and examining physician, and then use the purported inconsistency to discredit the examining physician's opinion. As the dissent acknowledges, Dr. Monigatti-Lake never explicitly opined on the ultimate question of disability. Dissent at 7051. Nor is there anything in the record, contrary to the dissent's suggestion, to indicate that Dr. Monigatti-Lake expressed an opinion that Ryan was capable of maintaining a regular work schedule. *Id.* Dr. Monigatti-Lake *did*, however, repeatedly express an opinion that Ryan was suffering from depression and anxiety, and on that issue her opinion is consistent with the opinion of Dr. Randhawa. These are Dr. Monigatti-Lake's clinical notes. She was never asked or expected in those notes to opine on disability.

**[4]** Finally, it is not possible to cure the ALJ's erroneous rejection of Dr. Randhawa's examining opinion with his finding that this rejection was "consistent with" the opinions of the two non-examining physicians, Drs. Harman and Harrison. The weight afforded a non-examining physician's testimony depends "on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3). The Mental Residual Functional Capacity Assessment ("MRFCA") form completed by Drs. Harman and Harrison contains no supporting explanation whatsoever for their opinion that "with continued [treatment]" Ryan could complete a regular workweek. That was simply their bare conclusion after checking a series of boxes on the MFCRA form, a conclusion that does not outweigh the remaining evidence in the record. *Hollohan*, 246 F.3d at 1207 (opinions supported by explanation and treatment records cannot be outweighed by opinion of nonexamining physician "who merely checked boxes without giving supporting explanations").

**[5]** Although the ALJ did not purport to rely on this form as his basis for rejecting Dr. Randhawa's and Dr. Crisp's opinions, even if we were to assume that he did, and thus considered their examining opinions controverted, the ALJ still failed to provide "specific and legitimate reasons" for rejecting those opinions. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). As explained above, Dr. Monigatti-Lake's treating records do not contradict the opinions of either Drs. Randhawa or Crisp, whose opinions were in turn based as much on their own clinical observations as they were on Ryan's description of her symptoms. *Id.* at 833 ("The nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of either the treating doctor's or the examining psychologist's opinion.").

**[6]** Because the Commissioner's decision was not supported by substantial evidence, and because the record con-

firms that, if Dr. Randhawa's assessment were accepted, Ryan could not make an adjustment to perform any other work, we REVERSE and REMAND with instructions to remand to the Agency for payment of benefits. *Sprague v. Bowen*, 812 F.2d 1226, 1231-32 (9th Cir. 1987).

REVERSED AND REMANDED.

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent because, in my view, substantial evidence supports the decision of the Administrative Law Judge (ALJ). Unlike the majority, I am persuaded that the ALJ gave proper weight to the opinions of all medical providers.

For purpose of this appeal, Social Security claimant Karen Ryan (Ryan) began visiting her treating physician, Dr. Monigatti-Lake regarding "her situation at work" on October 18, 1999. Ryan informed Dr. Monigatti-Lake that Ryan was on administrative leave following a random drug test during which she tested "positive for THC and apparently some amphetamines." Dr. Monigatti-Lake diagnosed Ryan as experiencing a "stressful situation due to Ryan's work difficulties," which occurred "a couple of months" before "her 5 yr. retirement contract."

Although Ryan expressed optimism about continuing with her employment, it was not to be. Ryan was terminated, and visited Dr. Monigatti-Lake on December 14, 1999, complaining of feelings of immobility, panic attacks, [and] crying spells." Ryan reported that Effexor[1] she was taking was not

---

[1]Effexor (Venlafaxine) is used to treat depression, anxiety disorder, and panic disorder. AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS, INC., DRUG INFORMATION: VENLAFAXINE (2007), http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a694020.html.

helping. Dr. Monigatti-Lake observed that Ryan was "coherent and oriented," assessed that Ryan was suffering from anxiety disorder, increased the Effexor prescription and prescribed Xanax.[2]

Ryan was seen a week later, at which time she reported that she could not concentrate very well and "would still get somewhat emotional," but was doing better. Dr. Monigatti-Lake observed that Ryan was "calm" but "somewhat anxious." Dr. Monigatti-Lake's diagnosis was "[a]nxiety disorder, *improving*" and "[d]epression, *improving*." (Emphasis added). Dr. Monigatti-Lake encouraged Ryan to seek counseling, and gave her the names of some therapists.

Ryan next visited Dr. Monigatti-Lake two and one-half months later, reporting that she had "bad days and good days." Ryan inquired about BuSpar,[3] which Dr. Monigatti-Lake thought was a good idea. Dr. Monigatti-Lake observed that Ryan was coherent "but very agitated" and diagnosed her with "[a]nxiety disorder." Dr. Monigatti-Lake continued Ryan on Effexor, started a prescription for BuSpar and instructed Ryan that she could continue to take Xanax.

Two weeks later, Ryan was seen again. Ryan reported that she was doing well on BuSpar and was taking Effexor regularly. Dr. Monigatti-Lake observed that Ryan was coherent but very agitated. Ryan was diagnosed as suffering from anxiety disorder and again referred for counseling.

[2]Xanax (Alprazolam) is used to treat anxiety disorder and panic attacks. AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS, INC., DRUG INFORMATION: ALPRAZOLAM (2003), http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a684001.html.

[3]BuSpar (Buspirone) is used to treat anxiety disorders or in the short-term treatment of symptoms of anxiety. AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS, INC., DRUG INFORMATION: BUSPIRONE (2003), http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a688005 .html.

Approximately three weeks later, Dr. Monigatti-Lake assessed Ryan with anxiety disorder. Ryan reported that she was continuing to take her medications, had not yet contacted a counselor, was going out for two to three hours and was working in the garden. Although Dr. Monigatti-Lake referred Ryan to the Department of Social Services approximately one month later, she did not opine that Ryan was disabled. Approximately six weeks later, during a follow-up visit for knee surgery, Dr. Monigatti-Lake noted that Ryan had "quite a bit of anxiety" but was tolerating it "fairly well." Dr. Monigatti-Lake diagnosed "anxiety disorder, *improving*." (Emphasis added).

Over seven months later, Dr. Monigatti-Lake saw Ryan, observing that Ryan was calmer than normal. Dr. Monigatti-Lake continued to diagnose anxiety disorder. Three weeks later, Dr. Monigatti-Lake noted that Ryan was "slightly less anxious." Dr. Monigatti-Lake diagnosed "anxiety disorder, *slowly improving*." (Emphasis added). Over seven months later, Dr. Monigatti-Lake diagnosed Ryan with chronic depression and anxiety. A visit four months later reflected no indication of anxiety or depression.

Dr. Monigatti-Lake's final notation approximately five months later stated that Ryan was still suffering from "occasional panic attacks." At that time, Ryan reported that she was "still trying to get disability benefits."

In summary, from December 14, 1999, through June 13, 2002, Dr. Monigatti-Lake diagnosed Ryan with anxiety, depression and panic attacks and noted continuous improvement. Not once during that period did Dr. Monigatti-Lake opine that Ryan was disabled, unable to work or agoraphobic.

In May, 2000, during the time she was being treated by Dr. Monigatti-Lake, Ryan underwent a psychiatric evaluation by Dr. Rajinder Randhawa. Dr. Randhawa concluded that Ryan "does have the ability to perform and understand simple,

repetitive, detailed and complex tasks which she is likely to use [sic] interest in due to lack of motivation and initiative and limited desires *at present* due to continuing depression and extreme anxiety at times." (Emphasis added). Dr. Randhawa's assessment that Ryan would be unable "to maintain regular attendance in the workplace" was limited to that particular moment in time. In fact, he predicted that "[i]f she gets psychotherapy along with aggressive psychiatric treatment in terms of anti-anxiety and an anti-depressant medication in appropriate and adequate dosages[,] . . . [h]er condition is likely to improve" and she could return to work.

Drs. Harman and Harrison, consulting physicians, made the following functional assessment between June and October, 2000: "with continued [treatment] anticipate able to do complex in low public [sic] with moderate impairments in ability to sustain [concentration and attention] [persistence and pace] and ability to complete regular work-week without interruption from her [psychological symptoms]." This assessment was entirely consistent with Dr. Randhawa's opinion that although Ryan was *presently* "unable to maintain regular attendance in the workplace[,] [h]er condition was *likely to improve*." (Emphasis added).

On August 4, 2000 (between the times of Dr. Randhawa's assessment and the completion of the Harman-Harrison assessment), Ryan was seen for a lesion on her leg. During that visit, she did not report any anxiety-related symptoms.

In December, 2000, Ryan was examined by Dr. Espino. Dr. Espino noted a history of anxiety disorder, and completed a functional capacity assessment. Although he listed several restrictions with regard to physical activity, his only reference to Ryan's psychological impairments was to state that she "clearly needs to be on her medication for anxiety."

On December 24, 2002, Ryan was seen by Colleen McKinnon, a licensed social worker with the Nevada County Behav-

ioral Health Department, who noted a history of anxiety disorder and major depression.

Ryan's final examination was done by Dr. Crisp, a physician with the Nevada County Behavioral Health Department. Ryan reported that she could relax at home but got anxious when she went out. Taking Ryan's report at face value, Dr. Crisp diagnosed her with major depression with agoraphobia and anxiety.

Ignoring the lack of a finding of disability by any of the medical providers, the majority opinion discounts the substantial evidence supporting the Administrative Law Judge's (ALJ) denial of benefits. The majority opinion rests on the ALJ's rejection of Dr. Randhawa's observation that Ryan "would have difficulty maintaining regular attendance in the workplace due to anxiety and depression and due to interruptions from her psychiatric conditions[,]" and on the ALJ's discounting of Dr. Crisp's diagnosis of agoraphobia. *See* Majority Opinion at pages 7040-45.

In reviewing this matter, it is important to clarify the standard of review. In Social Security cases, we employ a hierarchy of deference to medical opinions depending on the nature of the services provided. We "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); those who examine but do not treat the claimant (examining physicians); and those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See id.* As applied to this case, Dr. Monigatti-Lake's opinion was entitled to the most weight due to her status as treating physician. Acceptance of Dr. Monigatti-Lake's opinion over that of Drs. Randhawa and Crisp, examining physicians, would be entirely consistent

with our governing precedent. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (noting the deference given to a treating physician's opinion). Indeed, crediting the opinions of Drs. Randhawa and Crisp over that of Dr. Monigatti-Lake absent "specific and legitimate reasons supported by substantial evidence in the record" would directly contravene our precedent. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (citations omitted). Yet that is precisely what a majority of the panel concludes that the ALJ should have done and does itself. I respectfully disagree because the record does not support crediting the opinion of those examining doctors over the treating doctor.

An examination of the record reveals that Dr. Monigatti-Lake, Ryan's treating physician, never opined that Ryan was unable to work or would "have difficulty maintaining regular attendance in the workplace" as a result of her improving anxiety disorder and treatable depression. In fact, Dr. Monigatti-Lake's final notation regarding Ryan reflected only "occasional panic attacks" and an observation that Ryan was "still trying to get disability benefits." Although this notation reflects Dr. Monigatti-Lake's awareness of the possibility of a disability diagnosis, she did not in any way indicate that Ryan's conditions were disabling, although she had treated those conditions for a period in excess of two and one-half years.

A comparison of the medical records of the treating physicians from December 14, 1999, through June 13, 2002, with the records of Dr. Randhawa, a one-time examining physician, reveals a conflict to the extent of Dr. Randhawa's opinion that Ryan would "have difficulty maintaining regular attendance in the workplace." Indeed, Dr. Monigatti-Lake's notes indicate the opposite expectation. Dr. Monigatti-Lake expressly noted on several visits that Ryan's condition was improving, with her final notation referencing only "occasional panic attacks."

Given the conflict in the record between the treating physician's observation of a non-disabling, improving condition and the examining physician's opinion that Ryan's condition disabled her from regular attendance at work, it fell to the ALJ to resolve the conflict. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Resolving the conflict in favor of the treating physician's observations was eminently proper. Indeed, "[w]here the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citation omitted). Yet that is precisely what the majority does by selectively crediting the opinion of examining doctors over that of a long-term treating doctor. The majority opinion states that nothing in the record indicates that Dr. Monigatti-Lake expressed an opinion that Ryan was capable of maintaining a regular work schedule. *See* Majority Opinion, p. 7044 n.6. However, Dr. Monigatti-Lake's notations of continuing improvement are the very antitheses of a disability. *See, e.g. Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (recognizing the inherent conflict between an observation of improvement and a finding of disability); *see also Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (same).

The majority opinion takes issue with the ALJ's decision to give less weight to Dr. Randhawa's assessment because it was "based more upon the claimant's subjective complaints which are not fully supported in the record." However, this conclusion by the ALJ is amply supported by the record. Dr. Randhawa's conclusion that Ryan could not maintain regular attendance was explicitly predicated on the following statements: "[Ryan] *said* it is very difficult for her to even grow up [sic] an application as she starts having severe palpitations. Cold sweat and extreme anxiety and now *she feels* like she is going to pass out." (Emphases added). Dr. Randhawa did not connect his conclusion to any objective medical findings or observations. Rather, as the ALJ correctly noted, these quintessentially subjective complaints are not a sufficient basis of

support for a disability determination. One need look no further than the case cited by the majority, *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005) for guidance. In *Bayliss* we specifically ruled that substantial evidence supports the ALJ's decision not to rely on a medical opinion based on subjective complaints rather than clinical evidence. *See id.* at 1217. Like the doctor in *Bayliss*, Dr. Randhawa did not link his opinion to any clinical findings. Rather, he referenced only Ryan's subjective complaints. In such a circumstance, the ALJ's decision to give less weight to Dr. Randhawa's medical opinion is in accord with our precedent. *See id.*

The majority opinion also criticizes the ALJ's reliance on Dr. Monigatti-Lake's treatment records. In the majority's view, a diagnosis of "anxiety disorder" and/or "depression" by Dr. Monigatti-Lake obviates any conflict between Dr. Randhawa's opinion that Ryan would be unable to maintain regular attendance in the workplace and Dr. Monigatti-Lake's observations of improving functional capacity. However, a diagnosis of anxiety disorder or depression is a far cry from a finding of disability. In fact, millions of people work every day while being treated for anxiety disorder and/or depression. *See, e.g.,* Lynn Elinson, Patricia Houck, Steven C. Marcus and Harold Alan Pincus, *Depression and the Ability to Work*, PSYCHIATRIC SERV. 55, 29-34 (2004), *available at* http://www.ps.psychiatryonline.org/cgi/content/full/55/1/29 ("Depression treatment has . . . been shown to be cost-effective, to keep depressed persons employed, and to improve the productivity of depressed persons who are already working.") (footnote references omitted).

More to the point, the reason a treating physician's opinion is weighed more heavily is because the treating physician has a sustained relationship with the patient and is more likely to have a complete and accurate grasp of the patient's medical condition. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2). Yet the majority discounts the long-term medical record developed by the

treating physician Dr. Monigatti-Lake in favor of a conflicting medical opinion predicated on a single visit. This conclusion turns our Social Security jurisprudence on its head. Conflict arose when the examining physician, Dr. Randhawa, used Ryan's subjective complaints to opine that she was unable to maintain regular attendance at work even though the treating physician consistently noted that Ryan was coping fairly well with her conditions. It was entirely within the ALJ's purview to resolve the conflict. *See Edlund*, 253 F.3d at 1156.

In an effort to bolster its unjustifiable reliance on the one-time examination of Dr. Crisp to support a diagnosis of agoraphobia, the majority opinion cites *Regennitter v. Commissioner*, 166 F.3d 1294, 1299 (9th Cir. 1999). However, that case is readily distinguishable. In *Regennitter*, the later physician added diagnoses of post-traumatic stress disorder and nightmare disorder to the related diagnoses of major depression and panic disorder made by both doctors. *See id.* In this case, both Drs. Monigatti-Lake and Randhawa diagnosed anxiety disorder and depression. Dr. Crisp was the only medical provider in the entire record who diagnosed agoraphobia. Contrary to the majority's assertion, this diagnosis was not only at odds with that of the treating physician, it was at odds with the entire medical record, providing ample support for the ALJ's decision to give it less weight. *See Thomas*, 278 F.3d at 957. In addition and as the ALJ noted, the diagnosis was predicated on Ryan's statements that she "was extremely anxious . . . when she leaves home" and that "she has trouble even going to the grocery store." As we have repeatedly held, an ALJ may discount a medical opinion that relies on subjective statements rather than clinical findings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The majority's citation to *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) is inapposite. Reliance on *Young* would be appropriate if the evidence in the record reflected that Ryan's condition was "progressively deteriorating." *Id.* However, the medical record in this case is to the contrary. The

only physician who had a progressive perspective of Ryan's condition was Dr. Monigatti-Lake, her treating physician. And Dr. Monigatti-Lake consistently noted that Ryan's condition was improving, rather than deteriorating.

In sum, because Drs. Randhawa's and Crisp's opinions were based on Ryan's subjective complaints and conflicted with that of the treating physician, substantial evidence supported the respective weights given to those opinions by the ALJ when he determined that Ryan was not entitled to Social Security benefits. Unlike the majority, I would adhere to our precedent, afford the treating physician's opinion the greater weight to which it is due, and affirm the district court.