**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMUEL J. HUNT, | No. 13-36205 |
| Plaintiff - Appellant, | D.C. No. 6:12-cv-01964-HZ |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted March 7, 2016
Portland, Oregon

Before: BERZON and WATFORD, Circuit Judges, and SAMMARTINO,** District Judge.

Samuel J. Hunt appeals the ALJ's denial of his application for social security

disability benefits on three grounds.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\*      The Honorable Janis L. Sammartino, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

1.  Hunt first argues that the ALJ improperly rejected Dr. Truhn's assessment of his mental residual functional capacity.  An ALJ may only discredit the uncontradicted opinion of an examining physician for clear and convincing reasons supported by substantial evidence.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

(a)  The ALJ should not have relied on Hunt's lack of medical treatment history to reject Dr. Truhn's findings.  *See* 20 C.F.R. § 404.1529(c)(3)(v).  An ALJ must consider a claimant's explanations for a lack of medical treatment.  Soc. Sec. Ruling 96-7p at *7–8.  A claimant's inability to afford treatment and lack of access to services are relevant explanations.  *Id.* at *8.  Here, Hunt explained that he did not seek treatment for his physical conditions because he could not afford it.  As to attending counseling, Hunt explained that he did not drive and had difficulty coordinating rides.  The ALJ's sole reason for discounting Hunt's explanations for the lack of medical treatment—that Hunt could afford to smoke half a pack of cigarettes per day—is not persuasive.  The cost of medical treatment is not likely equivalent to the cost of Hunt's daily cigarette consumption, and the ALJ nowhere addressed Hunt's difficulty in coordinating transportation.

(b)  Hunt's report to Dr. Truhn that after 2001 he did not do work that "produced a check" was also not a reasonable basis on which to reject Dr. Truhn's

2

findings. Hunt never denied that he worked for money after 2001. He reported that he performed various odd jobs after 2001, the steadiest of which was in the Hurricane Katrina relief effort. His reference to working for a "check" seems to have been his way of distinguishing between temporary, ad hoc jobs and ongoing positions. It therefore did not reflect an inconsistency in his reporting to Dr. Truhn.

Moreover, even if Hunt's statements were inconsistent, Dr. Truhn was fully aware that Hunt was not an accurate historian. Dr. Truhn relied primarily on his own observations—including a battery of objective tests, with largely consistent results—to assess Hunt's limitations. *See Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008). For all of these reasons, Hunt's statement regarding when he worked for a "check" was not a valid reason to reject Dr. Truhn's findings.

(c) Finally, the ALJ took an overly formalistic approach to Hunt's history of semi-skilled work. The record reflects that, although Hunt's past work included some "semi-skilled" jobs, he in fact almost exclusively performed manual labor duties. Further, his most recent semi-skilled job, as a trucker, was cut short because Hunt rolled over the truck he was driving, suggesting that he could not handle the job. Also, Hunt's earnings record shows that he has had significant

difficulty keeping jobs since his last full-time position, indicating that he has not been successful in learning new skills.

In short, the ALJ did not identify substantial evidence in support of rejecting Dr. Truhn's conclusions.

2. Hunt next argues that the ALJ improperly rejected Dr. Rethinger's opinion that he is markedly limited in maintaining concentration, persistence, and pace.

In Dr. Rethinger's more specific conclusions in the residual functional capacity portion of his assessment, under the category "sustained concentration and persistence," he concluded that Hunt is markedly limited only in his "ability to carry out detailed instructions." The ALJ accounted for this limitation by concluding that Hunt is able to "understand, remember, and carry out one and two-step instructions and tasks only." Even if there is some tension between finding a marked limitation, overall, in the more general category, but a similarly severe limitation in only one subcategory, this is a tension the social security regulations appear to contemplate by providing different analytical frameworks within which such assessments are made. *See* 20 C.F.R. § 404.1520a(c)(4), (d)(3); Soc. Sec. Ruling 96-8p at *4.

3.  Hunt next challenges the ALJ's failure fully to credit the Goodwill Industries assessment of his work capabilities.

(a)  As previously discussed, Hunt's lack of medical treatment is not a persuasive reason to find that Hunt's limitations are not severe.

(b)  Hunt's reported learning disability and confusion regarding his educational level are not good reasons to reject the Goodwill assessment.  Hunt apparently reported to the Goodwill evaluator that he had a fifth-grade education, which is entirely consistent with the evaluations of his actual functioning performed by Drs. Truhn and Joffe shortly before he completed the Goodwill assessment.  In other words, no matter how many years Hunt was enrolled in school, what he ended up with was a fifth-grade education at best.  That Hunt at other points reported dropping out of school in the seventh or eighth grade or sometime later does not detract from the reality that his report to Goodwill regarding his functional academic abilities was entirely accurate, which is what matters for purposes of assessing his vocational prospects.  The ALJ should not have relied on Hunt's reported fifth-grade education to reject the Goodwill assessment.

Further, the ALJ rejected the assessment of Hunt's cognitive abilities because the Goodwill evaluator noted that Hunt reported he was dyslexic and/or

had a learning disability, while Dr. Truhn concluded that Hunt did not have a learning disability. But Hunt has consistently reported that he was diagnosed as dyslexic—for example, he told Dr. Truhn that he had been diagnosed as dyslexic in the second grade. Nothing in the record refutes the fact that Hunt was so diagnosed in the second grade. Moreover, Goodwill's premise, that Hunt had a learning disability, is not meaningfully different, in functional terms, from the conclusion that Hunt's intellectual functioning is borderline. Both impairments limit Hunt's ability to learn new skills, the aspect of Hunt's mental functionality critical to his ability to work. If anything, Hunt's actual cognitive abilities are more limited than that of someone who has a specific learning disability but is otherwise higher functioning.

The ALJ did adequately support his rejection of the Goodwill evaluator's assessment of Hunt's physical limitations by pointing to Dr. Perry's physical examination findings. But, given that we find objectionable the ALJ's treatment of the Goodwill assessment with regard to Hunt's *mental* limitations, the ALJ must reconsider the evidence and address the functional interaction of Hunt's mental and physical limitations, as reflected in the Goodwill assessment.

4. Hunt asks the court to enter judgment in his favor under the credit-as-true rule. *See Garrison v. Colvin*, 759 F.3d 995, 1019–20 (9th Cir. 2014). We decline

6

to grant such relief.  Rather, because the agency should have the opportunity to resolve the outstanding issues in this case, we remand to the ALJ for further consideration.

**REMANDED FOR RECONSIDERATION.**