NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 4 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MICHAEL C. NYGREN, | No.   20-35039 |
| Plaintiff-Appellant, | D.C. No. 3:19-cv-05005-MAT |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Mary Alice Theiler, Magistrate Judge, Presiding

Argued and Submitted March 16, 2021
San Francisco, California

Before:  BERZON, MURGUIA, and CHRISTEN, Circuit Judges.
Partial Dissent by Judge CHRISTEN

Plaintiff Michael Nygren appeals the district court's order affirming the

Commissioner of Social Security's decision denying Nygren's application for

Supplemental Security Income.  We review de novo and set aside a denial of benefits

if it is unsupported by substantial evidence or the administrative law judge ("ALJ")

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

committed legal error. *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020). We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse and remand. Because the parties are familiar with the facts, we recount them only as necessary to resolve the arguments on appeal.

Nygren contends that the ALJ failed to properly evaluate the medical evidence. First, Nygren argues the ALJ committed reversible error in failing to discuss the opinion of Dr. Erum Quadeer, his treating physician, regarding the limitations triggered by his ankle injury. If an ALJ overlooks a medical opinion, we must consider whether this error was harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Although Dr. Quadeer initially opined that Nygren has a set of specific limitations, she explicitly opined that those limitations would last for approximately four months. Because a disabling impairment must last or be expected to last at least twelve months, the Commissioner argues that the ALJ's failure to discuss Dr. Quadeer's opinion was harmless. We disagree. Although Dr. Quadeer initially limited Nygren to four months of modified work duty, she subsequently diagnosed Nygren with synovitis, degenerative joint disease, nerve entrapment, tasrsal tunnel syndrome, and tendonitis. "[A]n ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them." *Id.* at 1172–73. Because the ALJ did so here, we cannot

2

"confidently conclude" that the ALJ's error was harmless. *Id.* at 1173 (citation omitted).

Next, Nygren argues that the ALJ improperly rejected the opinion of Dr. Michael Dujela, a treating podiatrist. The ALJ in some respects gave "little weight" to Dr. Dujela's statements because "[h]is assessment of [Nygren's] functioning is inconsistent with the objective medical evidence in this case." An ALJ may reject a treating physician's opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). The ALJ explained that while "some of [Dr. Dujela's] outlined limitations are accommodated in the residual functional capacity above, other [sic] are clearly inconsistent with the medical record, including restrictions on fine and gross manipulation, which fall outside Dr. Dujela's medical expertise as a podiatrist." The ALJ highlighted specific contrary medical evidence, such as nerve conduction studies and a normal EMG of Nygren's lower extremities that led other physicians to conclude that Nygren's diagnosis of "complex regional pain syndrome was not supported." These are "specific and legitimate reasons" to discount Dr. Dujela's opinions. *Ryan*, 528 F.3d at 1198 (citation omitted).

What is more, Dr. Dujela's limitations were for the most part accounted for in the ALJ's residual functional capacity ("RFC") finding. Dr. Dujela indicated that Nygren could stand and walk between one to three hours each workday and that he

could sit throughout the workday. The ALJ's RFC finding largely reflected Dr. Dujela's opinion, indicating that Nygren could "stand and/or walk up to two hours in an eight-hour workday, and sit about six hours in an eight-hour workday." Any error was thus harmless because Dr. Dujela's primary limitations were accounted for in the RFC. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding that an error is harmless if it is "inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted).

Nygren also argues that the ALJ failed to properly evaluate the opinion of Dr. Amir Atabeygi, a treating physician. Nygren contends that the "ALJ does not acknowledge Dr. Atabeygi's discussion of why he prescribed a four-wheel walker to Nygren." But the ALJ did discuss the prescription of a four-wheel walker, finding that it did not reflect Nygren's true limitations. In any event, an ALJ need not address every single note or observation about a claimant's condition. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

However, the ALJ did not discuss Dr. Atabeygi's clinical findings on Nygren's severe hip pain, including Nygren's diagnoses of bursitis of the right hip and IT band syndrome. Dr. Atabeygi also indicated agreement with Dr. Dujela's complex regional pain syndrome ("CRPS") diagnosis, based on Dr. Atabeygi's reading of Nygren's bone scan. It appears that the ALJ entirely ignored these opinions, which is reversible error. *Marsh*, 792 F.3d at 1172–73. The dissent would

4

hold that this error was harmless. We respectfully disagree, because "an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them." *Id.* So even though the ALJ discussed Nygren's four-wheel walker prescription, we cannot "confidently conclude" that the ALJ's failure to mention Dr. Atabeygi's clinical findings was harmless. *Id.* at 1173 (citation omitted).

Finally, Nygren argues that the ALJ improperly rejected Dr. William Wilkinson's opinion. Dr. Wilkinson diagnosed Nygren in 2017 with major recurrent depression and unspecified anxiety disorder. Dr. Wilkinson described Nygren as having various mild to moderate limitations, but he also opined that Nygren would have marked limitations in performing activities within a schedule, in adapting to changes and maintaining appropriate behavior in a work setting, and in completing a normal workday or workweek without interruption.

The ALJ gave "some weight" to Dr. Wilkinson's opinion and explained that it is "generally consistent with the longitudinal treatment record and the claimant's limited treatment history," but stated that Nygren's "presentation to Dr. Wilkinson was not consistent with his presentation throughout the record" and that Dr. Wilkinson's opinions that Nygren had marked limitations "appear to be largely based on [Nygren's] self-report of symptoms, which are not wholly consistent with the evidence of record."

To the extent that the ALJ discredited Dr. Wilkinson's opinion because it was based on Nygren's self-report, that is a reversible error.[1] We have made clear that, in the context of mental health evidence, a clinical interview and mental health evaluation "are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Id.* In the context of mental health evaluations, a physician's reliance on self-reported symptoms is thus not a legitimate reason to reject a physician's opinion. *Id.*

The ALJ noted that Nygren's "presentation to Dr. Wilkinson was not consistent with his presentation throughout the record," but failed to specify other instances in the record that undermined Dr. Wilkinson's conclusions. The Commissioner points to the ALJ's decision to give "great weight" to Dr. Rogers's psychological evaluation, which the ALJ discussed in the preceding paragraph before the discussion about Dr. Wilkinson's findings. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted). Although the dissent is correct

---

[1] The dissent would instead read the ALJ's conclusion on Dr. Wilkinson to mean that Nygren's own self-reports throughout the record were inconsistent. We respectfully disagree with this interpretation.

that Nygren reported to Dr. Loyer that he had experienced some improvement in his mood, the ALJ did not mention Dr. Loyer and failed to provide *specific* reasons for discounting Dr. Wilkinson's opinion. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). On remand, the ALJ must specifically consider conflicting opinions together with any other relevant evidence, and, if the ALJ continues to give the opinion only "some weight," must provide "specific and legitimate" reasons for doing so. *Id.*

The ALJ's rejection of Nygren's subjective symptom testimony and of his fiancée's supporting testimony rested in large part on the ALJ's evaluation of the medical evidence. As we find that evaluation inadequate, we do not address the credibility findings independently.

We reverse and remand to the district court with instructions to remand this case to the ALJ for further findings consistent with this decision. Specifically, the ALJ should consider the opinions of Dr. Quadeer and Dr. Atabeygi, reevaluate whether Dr. Wilkinson's opinions should be assigned greater weight, and revisit the credibility issues in light of any revisions in the evaluation of the medical evidence. *See Marsh*, 792 F.3d at 1173.

**REVERSED and REMANDED.**

*Nygren v. Saul*, No. 20-35039

CHRISTEN, Circuit Judge, partially dissenting:

I agree with the result reached by the majority, but I write separately to address two points on which I disagree.

1.    I would hold that the ALJ's failure to specifically mention Dr. Atabeygi's diagnosis of complex regional pain syndrome (CRPS) was harmless error.  The ALJ considered whether the medical evidence supported the CRPS diagnosis, noted that Drs. Mark Holmes, Alfred Blue, and Terry Felts all agreed that Nygren did not have CRPS, and acknowledged that "there is[] a dispute in the record between physicians as to whether the claimant has complex regional pain syndrome."  Dr. Atabeygi's diagnosis of hip pain and IT band syndrome was adequately accounted for by the RFC, which stated that Nygren can "sit about six hours in an eight hour work day" and is "unable to operate foot controls with the left lower extremity."  The majority concludes the ALJ's failure to specifically discuss each limitation noted by Dr. Dujela is harmless error because "the ALJ's RFC finding largely reflected Dr. Dujela's opinion."  Maj. Memo. at 4.  I would reach the same conclusion with respect to Dr. Atabeygi's clinical findings.

2.    I would also hold that the ALJ's evaluation of Dr. Wilkinson's opinion was not error.  The majority relies on *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017), to conclude that the ALJ improperly discounted Dr.

Wilkinson's opinion because it relied on Nygren's self report. Maj. Memo at 6. In *Buck*, we held that a clinical interview and mental health evaluation "are objective measures and cannot be discounted as a 'self-report'" because mental health diagnoses will always depend in part on the patient's self-report. *Id*. The ALJ gave "some weight" to Dr. Wilkinson's opinion but concluded "the claimant's presentation to Dr. Wilkinson was not consistent with [Nygren's] presentation throughout the record." In other words, Nygren's own self reports were inconsistent, and the ALJ discounted Dr. Wilkinson's testimony because Nygren described his symptoms differently to Dr. Wilkinson than he had to other care providers.

The majority concludes that the ALJ "failed to specify other instances in the record that undermined Dr. Wilkinson's conclusions." Maj. Memo. at 6. But as the ALJ noted, the evidence strongly suggests "[Nygren's] mental health impairments are not as severe as he has alleged." Nygren's own testimony at the hearing established that he felt his depression and anxiety were well controlled by medication. This testimony was supported by record evidence from a mental health evaluation with Dr. Loyer in September 2017, a month after Nygren saw Dr. Wilkinson. Nygren reported to Dr. Loyer that he had experienced a significant improvement in his mental health after a change in his pain medication. Dr. Loyer's assessment after one session was that Nygren "[h]as had a great time with

his children and wife this past couple weeks and is very happy about that and appreciative.  Gaining insight."

In all other respects, I agree with the majority.