**Sherry HOWARD, on behalf of Sarah WOLFF, Plaintiff–Appellant,**

v.

**Jo Anne BARNHART, Commissioner, Social Security Administration, Defendant–Appellee.**

No. 02–15587.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 2003.

Filed Aug. 29, 2003.

**1008**

Mark Ross Caldwell, Phoenix, Arizona, for the appellant.

William T. Dawson, Assistant Regional Counsel, Social Security Administration, Denver, Colorado, for the appellee.

\* Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit,

Before HUG, GIBSON,\* and FISHER, Circuit Judges.

## OPINION

HUG, Circuit Judge.

Sherry Howard ("Howard"), the maternal aunt and legal guardian of Sarah Wolff ("Sarah"), appeals the district court's grant of summary judgment affirming the Commissioner of Social Security (the "Commissioner")'s determination that Sarah is no longer disabled within the meaning of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c, as of September 1, 1997. We have jurisdiction under 28 U.S.C. § 1291. For the reasons below, we reverse and remand to the district court with instructions to remand to the Social Security Administration.

On appeal, Howard argues that the administrative law judge's ("ALJ") decision was not supported by substantial evidence because he engaged in a selective evaluation of the evidence and failed to consider the combined effects of Sarah's impairments. Additionally, Howard asserts that the ALJ reviewed Sarah's case under the incorrect legal standard and committed legal error by not making a reasonable effort "to ensure a qualified pediatrician or other individual who specializes in a field of medicine appropriate to" Sarah's disability evaluate Sarah's case, as required by 42 U.S.C. § 1382c(a)(3)(I). Each argument is addressed in turn.

## I. Background

Sarah was born on March 14, 1993 and has lived with Howard since she was 15 days old. Sarah was first approved for Supplemental Security Income ("SSI") benefits on February 1, 1996. She was

sitting by designation.

found disabled due to secondary borderline IQ and developmental delays under the "comparable severity" standard applicable at that time for the determination of child-hood SSI benefits.

Public Law 104–193, amending Social Security Act § 1614(a)(3)(C), 42 U.S.C. § 1382c(a)(3)(C), was passed on August 22, 1996. The law established a new standard for determining SSI benefits for children under the age of 18. Under the new law, children previously granted SSI benefits were required to have their disability status redetermined. Accordingly, Sarah's eligibility under the new law was redetermined and she was found ineligible for benefits effective November 1997.

## A. Sarah's Medical Records

On March 21, 1996, psychologist Dr. Roth evaluated Sarah when she was 36 months old and had completed formal developmental testing. The tests showed that Sarah had the mental age of a 27–month–old child. Additionally, the report indicated that "Sara ha[d] the socialization skills at a 15 month level, self-help and motor skills at an 18 month level, and communication skills at a 19 month level." Dr. Roth also reported that Sarah was a "3 year old child with a history of post-maturity, metabolic acidosis" and that her development had been either normal or questionable since she had been followed in the newborn clinic.

On April 11, 1996, speech/language pathologist Skorobohaty performed a speech and language evaluation. The tests revealed a "severe developmental delay in the area of phonology and articulation with average to low average expressive and receptive language skills." Speech and language therapy was recommended.

Also dated April 11, 1996, is a comprehensive development assessment report from a school psychologist and school psychometrist. Testing revealed "the presence of a moderate developmental delay in the areas of cognitive development . . . and adaptive behaviors."

On May 8, 1996, physical therapist Renner evaluated Sarah. At this time, Sarah was 2.33 standard deviations below the norm for gross motor development. Additionally, Renner found that "muscle tone [was] hypotonic" and that Sarah had unstable trunk muscles. Sarah also underwent an evaluation by occupational therapist Reynolds on May 8, 1996. It was determined that although Sarah was cooperative, capable of learning, and could do more tasks than her developmental skill level indicated, Sarah had "some primitive reflexes and a significant delay in her fine motor movement." At this time, Sarah qualified for occupational therapy services.

On May 28, 1997, Sarah was evaluated by Dr. Maier, who determined that Sarah had a parent-child relational problem, failure to thrive and borderline intellectual functioning.

On August 14, 1997, Sarah underwent a psychological consultation by Dr. Leonard. Dr. Leonard determined that while Sarah was extremely small for her age, Sarah tested in the average age for intellectual testing. Further, Dr. Leonard determined that Sarah's "behavioral presentation and history did not support the diagnosis of any schizophrenic or psychotic process. . . ." Dr. Leonard also suggested that Sarah continue to receive services such as "special needs preschool, physical, occupational, and speech therapy." It was also recommended that Sarah be watched carefully, because she had been diagnosed with delays in the past.

On March 17, 1998, speech/language therapist Gorney conducted a speech and language evaluation. The evaluation and observation indicated that Sarah demonstrated "age and developmentally appropriate receptive and expressive language

skills as well as speech sound production skills." Additionally, "[t]he multidisciplinary evaluation team reviewed the results of [the] evaluation and determined and agreed that 12449 [Sarah] was no longer eligible to receive special education services in the area of speech/language skills."

On April 15, 1998, Reynolds conducted another occupational therapy evaluation. This evaluation revealed Sarah had "improved and matured tremendously in the past two years." Reynolds noted that visual-motor coordination still presented a challenge, but that Sarah may be ready to graduate from occupational therapy.

On April 22, 1998, Drs. Leonard and Li conducted an additional psychological evaluation report. This report indicated that Sarah was operating in the average range of intellectual abilities and that she performed well on aspects of verbal and visual-constructive processing. Sarah also showed signs of "subtle neurocognitive inefficiencies" that were not consistent with her intellectual functioning. The psychologists reported that Sarah exhibited developmental delays in gross and fine motor coordination. Further, the report indicated that Sarah was "eligible for special education services under the areas of moderate preschool delay and speech and language impairment." Additionally, the psychologists indicated Sarah should continue to receive "treatment intervention to improve her chances of being successful in the academic setting."

On May 7, 1998, Sarah underwent a full and individual evaluation by school psychologist Morrison. The evaluation reported that Sarah was no longer eligible for special education services. Rather, her cognitive development was within the average range and her adaptive skills were within the below average range. The school psychologist determined that Sarah had the skills needed to participate and

progress in the "general kindergarten curriculum."

On August 28, 1998, a psychiatric evaluation report was conducted by Dr. Silverman of Michael B. Bayless and Associates. This evaluation revealed "developmental delays secondary to intrauterine drug exposure and/or neonatal hypoxia."

On November 24, 1998, Dr. Johnsen conducted a neurological evaluation, finding that Sarah "appeared to be a somewhat short child with minor dysmorphic features.... [having] significant delay in intellectual and, to a lesser extent, motor development."

On February 26, 1999, a report from the Arizona Long Term Care Services indicated that Sarah required assistance with dressing and was totally caregiver dependent. The report noted the April 1998 evaluation by a neuropsychologist. It then stated that Sarah was eligible for Arizona Long Term Care Services.

On May 3, 1999, Sarah was seen by Dr. Nowlen, a pediatric cardiologist. A report from Dr. Nowlen indicated that Sarah may have William's syndrome, but that she had no intracardiac or great vessel abnormalities, or signs or symptoms of congestive heart failure. At that time, there were no activity restrictions from a cardiac standpoint.

Additionally, State agency physicians Drs. Kirschner and Kirschvink reviewed Sarah's medical impairments. Upon review, they determined that Sarah's impairments did not meet, equal or functionally equal any listing impairment.

## B. The ALJ Decision

A hearing before an ALJ was conducted on June 22, 1999. At that time, Sarah was six years old. Prior to the hearing, Howard requested that a medical expert specializing in pediatrics be called to appear at the hearing. Howard made the same request again at the hearing. The ALJ

denied the requests, explaining that the record was sufficiently well-developed and that a medical expert was not needed. On October 15, 1999, the ALJ issued a decision that Sarah was not disabled under the new 1996 statutory definition. The Appeal's Council adopted the ALJ's decision.

At the hearing, both Howard and Sarah testified. The ALJ found Howard's testimony to be credible and sincere. Howard testified that she believed Sarah to be disabled because she was developing slowly and did not engage other children in play. Additionally, Sarah did not use playground equipment, acted younger than her age, and could not ride a bicycle. According to Howard, Sarah frequently failed to use the toilet and needed to wear diapers.

Howard also testified that Sarah was diagnosed with a mood disorder and was quiet and withdrawn. However, according to Howard, Sarah spoke clearly and in full sentences. Howard also explained that when Sarah was in kindergarten, she interacted well with her teacher, despite not interacting much with other children. Howard also admitted that Sarah's problems had improved, but testified that she was still behind other children.

Sarah said little when she testified at the hearing. However, she seemed to understand the questions and, according to the ALJ, she shook her head in response. The ALJ commented in his decision that she appeared to be a typical 6-year-old child.

In his decision, the ALJ noted the reports of Drs. Roth, Johnsen, Leonard, Li, Nowlen, and Silverman. Additionally, the ALJ noted the records from Michael Bayless and Associates. Furthermore, the ALJ referenced the school reports, speech and language evaluations, and occupational therapy evaluations.

In determining that Sarah did not meet the criteria for disability under § 1614(a)(3)(A) of the Social Security Act, the ALJ found that after independently reviewing the medical record, and listening to the testimony, Sarah's impairments did not meet or equal any of the criteria contained in the Listing of Impairments. The ALJ did find that Sarah suffered from "severe developmental delays and possible Williams disorder, which is nonsevere." However, the ALJ also noted that Sarah's impairments had improved greatly, and that such improvement was indicated in the medical and educational records.

## II. Discussion

■■■ We review de novo a district court's order upholding a denial of social security benefits. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir.2003). On de novo review, the decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. *Pagter v. Massanari*, 250 F.3d 1255, 1258 (9th Cir.2001). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (citation omitted).

### A. Whether Substantial Evidence Supports the ALJ's Decision

To determine whether a claimant is disabled, the ALJ must determine whether a claimant's impairments meet, medically equal or functionally equal a listed impairment in appendix 1 of subpart P, part 404 of the CFR. *SSA Interim Final Rules; Determining Disability for a Child Under Age 18* ("Interim Final Rules"), 62 Fed. Reg. 6408, 6422 (Feb. 11, 1997);[1] 20 C.F.R.

---

**1.** The Final Rules for determining childhood disability were published in 2000. However, the Final Rules do not apply to this case.

§ 416.924(d)(1997). The claimant's impairment will medically equal a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings." Interim Final Rules, 62 Fed. Reg. at 6424; 20 C.F.R. § 416.926(a)(1997). The impairment will be considered functionally equivalent if the claimant has marked limitation in two areas or extreme limitation in one area. Interim Final Rules, 62 Fed. Reg. at 6425, 20 C.F.R. § 416.926a(b)(2)(1997). Functional equivalence may be shown in the following five areas: 1) cognition/communication functioning, 2) motor functioning, 3) social functioning, 4) personal functioning, and 5) concentration, persistence or pace. *Id.*

■■■■ In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. *See Crane v. Shalala,* 76 F.3d 251, 255 (9th Cir.1996). In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923. However, in interpreting the evidence and developing the record, the ALJ does not need to "discuss every piece of evidence." *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998); *see also Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir.1984).

Howard contends that the ALJ's decision was founded only on a "specific quantum of supporting evidence." She argues that the ALJ relied on an April 15, 1998 occupational therapy evaluation which reported that Sarah had improved and matured tremendously and that the ALJ's reliance on this statement was error. Additionally, Howard asserts that the ALJ ignored a subsequent medical review from Arizona Long Term Care Services, which

found that "problems with motor coordination, adaptive functioning and communication" would necessitate physical, occupational, and speech therapy.

■■■ The district court found that the ALJ did not selectively analyze the evidence. The court concluded that the ALJ was not required to discuss every piece of evidence and that the ALJ's decision was supported by substantial evidence. We agree.

While the ALJ noted the positive evaluation, this was done in conjunction with other reports, and it was not the only evidence which the ALJ relied upon to make his determination. Further, the medical review from Arizona Long Term Care Services was based on the April 1998 neuropsychologist report, which the ALJ did discuss. Thus, because the ALJ is not required to discuss evidence that is neither significant nor probative, *see id.,* we conclude that the ALJ's failure to discuss this report was not error.

■■■ Furthermore, as the district court found, substantial evidence existed to support the conclusion that Sarah did not have marked limitation in the areas of cognitive/communicative functioning, motor functioning, personal functioning or concentration, persistence and pace. Evidence supporting this finding included speech/language therapist Gorney's 1998 evaluation that indicated Sarah was no longer eligible to receive special education services in the area of speech and language skills because of her improvement in those areas. Also in 1998, occupational therapist Reynolds indicated that Sarah had "improved and matured tremendously" and that Sarah may be ready to graduate from occupational therapy. Evidence

---

Rather, the ALJ's decision is reviewed under the Interim Final Rules which were in effect at the time of the final decision. *Determining*

*Disability for a Child Under 18,* 65 Fed. Reg. 54747, 54751 (Sept. 11, 2000).

also existed to support the ALJ's finding that Sarah had some difficulty in the area of social functioning. For example, Drs. Leonard and Li, in 1998, determined that Sarah's socialization skills were in the low-average range. The presence of contradictory reports does not preclude a finding that a claimant is not disabled. *See Thomas v. Barnhart,* 278 F.3d 947 (9th Cir. 2002). Because Sarah did not have marked limitations in two broad areas of functioning, or an extreme limitation in one area, the ALJ could find that she was not disabled.

With respect to Howard's argument that the ALJ considered Sarah's impairments in isolation and failed to consider the combined effects of her impairments, we disagree. As the district court found, the ALJ properly considered Sarah's impairments in combination when assessing her limitations under each of the broad areas of functioning.

## B. Denial of Request for An Expert

■ In 1996, the Personal Responsibility and Work Opportunity Reconciliation Act (1996 Act) was passed, thereby changing the eligibility standard for children. The new law defines childhood disability as a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" in individuals under 18 years of age. 42 U.S.C. § 1382c(a)(3)(C)(i). The law applies to all child disability applicants with claims filed after August 22, 1996. *Jamerson v. Chater,* 112 F.3d 1064, 1065 n. 1 (9th Cir.1997). The change in the law was designed so that "only needy children with severe disabilities be eligible for SSI." H.R. Conf. Rep. No. 104–725 at 328 (1996); 1996 U.S.C.C.A.N. 2649, 2716 (available at 1996 WL 443732).

■ Section 1382c(a)(3)(I) of the Social Security Act provides:

> In making any determination under this title ... with respect to the disability of an individual who has not attained the age of 18 years ..., the Commissioner of Social Security *shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual* (as determined by the Commissioner of Social Security) evaluates the case of such individual.

42 U.S.C. 1382c(a)(3)(I)(emphasis added). Howard challenges the ALJ decision on the basis that the ALJ made no effort to have a "qualified pediatrician or other individual who specialized in a field of medicine appropriate" to Sarah's disability evaluate her case, before determining that she was no longer eligible for benefits.

There is little case law interpreting the relevant provision of the statute. Research has revealed only two cases which discuss it, and neither is particularly helpful. *See Towenson v. Apfel,* 16 F.Supp.2d 1329, 1333 (D.Kan.1998) (finding the ALJ's failure to expressly state the qualifications of an examining psychologist did not warrant reversal); *Shinn v. Apfel,* 1998 WL 173223 at *5–6 (N.D.Miss. March 10, 1998) (finding that the specialist who evaluates the claimant's case under the statute need not have a pediatric specialty). Unlike the other cases that address the statute, in this case the ALJ did not consult the report of a specialist who examined the claimant's case as a whole.

In response to Howard's request for a pediatrician or other specialist, the ALJ recognized that he had the discretion to order an expert evaluation; however, he found it unnecessary because the record was well-developed. In making his ultimate decision that Sarah was not disabled,

the ALJ relied on a developmental psychologist, a neuropsychology fellow, a licensed psychologist, a school psychologist, a registered occupational therapist, a speech/language therapist, a school psychometrist, a speech/language pathologist, a child neurologist, a child and adolescent psychiatrist, and a pediatric cardiologist. The district court agreed that the record was well-developed and found that the ALJ was not obligated to call an expert witness to evaluate the case.

We conclude that despite the various reports in the record, the ALJ erred. In making his disability determination, the ALJ failed to rely on a "case" evaluation. Rather, he only relied on the individual evaluations and reports of each separate specialist, which pertained to each of their individual specialities. The ALJ made no effort to have Sarah's case evaluated in its entirety.

 The statute states that the ALJ "*shall* make reasonable efforts" to ensure that a qualified individual "evaluates the *case*" of the claimant. 42 U.S.C. 1382c(a)(3)(I)(emphasis added). We interpret this to mean that the ALJ is required to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own case evaluation from the evidence in the record.[2]

Despite the various reports of doctors and specialists indicating their independent views of Sarah's situation, at no point did the ALJ have her case evaluated as a whole, nor did he indicate that there was a "case" evaluation in the record. It may be

that the ALJ achieved substantial compliance with the statute, in that the state agency doctors Kirschvink and Kirschner, who did evaluate Sarah's case, may be appropriate qualified specialists; however, we cannot make that determination on the record. Additionally, the ALJ did not consider these evaluations in making his decision.

We conclude that the ALJ did not comply with the mandate of 42 U.S.C. § 1382c(a)(3)(I). Therefore, we remand to the ALJ for further proceedings so that the record may be further developed with respect to Sarah's case.

## C. Whether the ALJ Properly Redetermined Sarah's claim under Public Law 104–193

Howard contends that the ALJ committed an error of law by evaluating her case under the medical improvement standard, rather than making an entirely new determination. The Commissioner argues that despite the ALJ decision setting forth the medical improvement standard, the ALJ correctly evaluated Sarah. In fact, the ALJ decision references both the medical improvement standard for continuing disability reviews, as well as the definition of childhood disability under Public Law 104–193. Because both standards are included in the decision, it is not clear what standard the ALJ used in determining whether Sarah was disabled. On remand, the ALJ will need to clearly state the appropriate legal standard.

## III. Conclusion

Although substantial evidence exists in the record to support the ALJ's decision,

---

**2.** The district court found that the ALJ did not err in failing to obtain a case evaluation from a qualified expert because the record was replete with reports from expert physicians who had examined Sarah. There is a distinction, however, between having an expert evaluate a claimant with respect to that expert's

particular specialty, and having an expert evaluate a claimant's case in its entirety, considering all of the medical records and determining whether those indicate that the claimant is disabled within the meaning of the Social Security Act.

because the ALJ committed legal error in not following the mandate of 42 U.S.C. 1382c(a)(3)(I), we reverse the district court's grant of summary judgment in favor of the Commissioner and remand with instructions to remand to the ALJ for further proceedings.

REVERSED AND REMANDED.