# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLINTON HILER,

*Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

*Defendant-Appellee.*

No. 10-36171

D.C. No.
3:09-cv-00206-TMB

OPINION

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted
June 25, 2012—Anchorage, Alaska

Filed August 9, 2012

Before: Alfred T. Goodwin, William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

**COUNSEL**

Allison Elizabeth Mendel (argued), Mendel & Associates, Anchorage, Alaska, for plaintiff-appellant Clinton Hiler.

Karen L. Loeffler and Gary Michael Guarino, Office of the United States Attorney, Anchorage, Alaska, and David Morado and Kathy Reif (argued), Social Security Administration, Seattle, Washington, for defendant-appellee Michael J. Astrue, Commissioner of Social Security.

---

**OPINION**

M. SMITH, Circuit Judge:

Clinton Hiler (Hiler) appeals a district court judgment affirming the Social Security Administration's (SSA) decision finding him disabled from September 26, 1997 through December 3, 1998, but also concluding that the disability ended on December 4, 1998, due to medical improvement. Hiler contends that the Administrative Law Judge's (ALJ) medical improvement finding is not supported by substantial evidence because she erred in relying on a single proposed rating decision, dated December 28, 2001, from the Department of Veterans Affairs (VA) (the 2001 decision). He also claims that the ALJ erred by failing to mention the opinion of

treating physician, Dr. John Regan. We hold that the ALJ erred in relying solely on the 2001 decision, and we reverse and remand on that ground.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 2004, Hiler filed a claim for disability insurance benefits, alleging lumbar spine impairment, right knee impairment, and severe back pain, beginning October 21, 1993. After an initial rejection, an appeal, and a hearing on his application, the ALJ handed down a partially favorable decision. Employing the five-step sequential evaluation process under 20 C.F.R. § 404.1520, the ALJ found that Hiler was disabled from September 26, 1997 through December 3, 1998, due to "degenerative disc disease of the lumbar spine, right knee degenerative joint disease, and bilateral flat feet," and was unable to work on a regular and continuing basis during this period.

However, the ALJ also found that Hiler's disability ended on December 4, 1998, due to medical improvement of his condition. On July 20, 1998, Dr. Peterson performed surgery on Hiler to address his knee and back pain. In October 1998, Dr. Peterson opined that Hiler's recovery from surgery had been successful, and he estimated that Hiler would be able to perform sedentary work by December 1998, and light level work by January. In December 1998, Dr. Peterson opined that Hiler was a suitable candidate for vocational rehabilitation at any time, and that such rehabilitation could lead to his being able to perform sedentary jobs. Hiler underwent physical therapy, and he testified that he also performed minor household work, took care of his three young children after his wife left him, with help from his family, and attended school as part of his vocational rehabilitation.

From the evidence in the record, the ALJ found that beginning December 4, 1998, Hiler had the residual functional capability to lift or carry up to 20 pounds occasionally, to sit

for six hours of an eight-hour day, and to stand or walk for six hours of an eight-hour day. Based on these capabilities, and the testimony of the vocational expert, the ALJ found that Hiler could have performed several jobs, such as an information clerk, telephone solicitor, or telephone quotation clerk.

In so finding, the ALJ noted that her conclusion was consistent with the 2001 VA rating decision:

> The undersigned notes, however, that the residual functional capacity determination above is consistent with a rating decision issued by the Department of Veterans' Affairs on December 28, 2001, that decreased the claimant's low back injury from 40 percent to 10 percent disabling; decreased his retropatellar [right knee] pain syndrome from 30 percent to 10 percent disabling; and terminated his continued entitlement to individual unemployability based on medical improvement of his knee and back conditions (Ex. 16F/l). This is consistent with the undersigned's finding of improvement to the residual functional capacity found for December 4, 1998, through September 3, 2000, the date last insured. The findings of the undersigned are therefore consistent with the contemporaneous VA rating and [compliant] with *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

Hiler filed a complaint in the district court, challenging the finding that his disability ended on December 4, 1998. The district court denied Hiler's motion for summary judgment, on October 25, 2010. In its review of the ALJ's use of the VA rating decisions, the district court noted that "the ALJ chose to credit the more recent VA decision over the older [1998] determination" because the disability ratings were not permanent, and were intended to be revisited at a later date. The district court also determined that the ALJ's crediting of the 2001 decision over the September 17, 1998 VA rating deci-

sion (the 1998 decision) and the April 9, 2002 VA rating decision (the 2002 decision) was permissible because the ALJ may choose among inconsistent ratings, so long as she had permissible reasons for crediting one rating over another. The district court entered judgment against Hiler on October 26, 2010, and Hiler timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.

We review de novo a district court's order upholding the ALJ's decision. *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ's findings may be set aside only if they are "based on legal error or are not supported by substantial evidence." *Id.* Our review is deferential and "[i]f the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." *Id.*

## DISCUSSION

Hiler argues that the ALJ's conclusion regarding his alleged medical improvement was not supported by substantial evidence, because: 1) the ALJ erred in relying only on the proposed reductions in the 2001 decision, and ignoring the 1998 decision and the 2002 decision; and 2) the ALJ failed to consider the opinion of Hiler's treating physician, Dr. Regan.

### I. The VA Rating Decision

**[1]** The ALJ must "ordinarily give great weight to a VA determination of disability." *Id*. While a VA disability decision "does not necessarily compel the SSA to reach an identical result, . . . the ALJ must consider the VA's finding in reaching his decision," because of the similarities between the VA disability program and the Social Security disability program. *Id.* However, because the two federal programs are not

identical, "the ALJ may give *less weight* to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (emphasis added).

Hiler's administrative record includes several VA decisions. First, in the 1998 decision, the VA found that Hiler was entitled to "individual unemployability," because he was unable to secure or follow a gainful occupation due to his disabilities. However, permanency of the disability was not established at that time because the VA found that there was a reasonable chance that Hiler's low back and right knee disabilities would improve, and that he would become employable. Second, in the 2001 decision, the VA issued a decision that *proposed* to decrease Hiler's low back injury from 40 percent disabling to 20 percent, to decrease his right knee injury from 30 percent disabling to 10 percent, and to terminate his entitlement to individual unemployability. On January 24, 2002, the VA sent a copy of the 2001 decision to Hiler, and stated that it proposed to make the reductions in the decision. The letter also stated that Hiler could submit additional evidence or request a personal hearing to show why the VA should not make the changes. Hiler made the request for a hearing on February 4, 2002, and the VA issued another rating decision on April 9, 2002. In its 2002 decision, the VA rejected the changes proposed in the 2001 decision, and retained Hiler's low back and right knee disabling percentages (at 40 percent and 30 percent, respectively) that were part of the 1998 decision, and also retained Hiler's individual unemployability rating.

**[2]** The ALJ erred in relying only on the 2001 decision, with its proposed rating changes, and disregarding the VA's 1998 decision and 2002 decision. The 2001 decision only *proposed* changes to Hiler's ratings, and did not officially change them. The tentative nature of the 2001 decision is further shown by the VA's January 24, 2002 letter to Hiler, informing him of the proposed reductions and termination of his employability rating, and giving him an opportunity to submit

more evidence or request a hearing before the decision became final. The letter specifically stated that "reduced payments" would begin following the VA's notice to Hiler of its *final* decision.

**[3]** Thus, the ALJ's finding that the 2001 decision "decreased the claimant's low back injury from 40 percent to 10 percent disabling; decreased his retropatellar [right knee] pain syndrome from 30 percent to 10 percent disabling; and terminated his continued entitlement to individual unemployability based on medical improvement of his knee and back conditions" shows that she misconstrued the nature of the 2001 decision. The record clearly shows that the 2001 decision did not make any final changes as to Hiler's disability rating, nor did it terminate his individual unemployability rating. In sum, the ALJ's statement that the 2001 decision changed Hiler's disability rating and terminated his individual unemployability rating is not supported by substantial evidence in the record.

**[4]** We reject the contention that the 1998 decision, the 2001 decision, and the 2002 decision were "inconsistent" decisions from which the ALJ could make a selection. The 2001 decision was not a final decision, and its proposed changes were rejected in the 2002 decision. We also reject the idea that the ALJ could rely on the 2001 decision simply because it was more "contemporaneous" with the time period for which she was evaluating Hiler's disability. Because the 2001 decision only *proposed* changes, Hiler's actual VA disability rating and his individual unemployability rating remained *unchanged* from that determined by the 1998 decision, as of the time of the 2001 decision.

**[5]** We conclude that the ALJ erred in relying on a 2001 decision that only proposed changes, while ignoring the 1998 decision and the 2002 decision that rejected the proposed changes recommended in the 2001 decision. The ALJ's misunderstanding led her to inaccurately conclude that her find-

ing that Hiler's disability terminated on December 4, 1998 was consistent with the VA's ratings. Accordingly, the ALJ's finding of medical improvement was not consistent with Hiler's true VA ratings, and she does not give any reasons for the deviation. *See McCartey*, 298 F.3d at 1076. Therefore, we remand the case to the ALJ for further proceedings consistent with this opinion.

We note that, on remand, the ALJ is not compelled to adopt the conclusions of the VA's decisions wholesale, but if she deviates from final VA decisions, she may do so based only on contrary evidence that is "persuasive, specific, valid" and supported by the record. *McCartey*, 298 F.3d at 1076; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

## II.   Dr. Regan's Opinion Testimony

Because we remand the case to the ALJ for the reasons stated, we decline to reach this alternative ground for remand. However, because the testimony may remain an issue to be addressed on remand, we remind the ALJ that generally a treating physician's opinion carries the most weight of the various types of physician testimony. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Thus, to reject the opinion of a treating physician that is not contradicted by another doctor, the ALJ must provide "clear and convincing" reasons. *Id.* However, the ALJ is "not required to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." *Id.* On remand, the ALJ should adhere to these standards when evaluating the testimony of Dr. Regan.

### CONCLUSION

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.