**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD T. KENNEDY,
*Plaintiff-Appellant*,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,
*Defendant-Appellee*.

No. 12-55430

D.C. No.
2:11-cv-03809-
RZ

OPINION

Appeal from the United States District Court
for the Central District of California
Ralph Zarefsky, Magistrate Judge, Presiding

Argued and Submitted
November 8, 2013—Pasadena, California

Filed December 31, 2013

Before: Raymond C. Fisher and Richard R. Clifton, Circuit
Judges, and James K. Singleton, District Judge.[*]

Opinion by Judge Fisher

---

[*] The Honorable James K. Singleton, Senior United States District Judge for the District of Alaska, sitting by designation.

## SUMMARY[**]

### Social Security

The panel affirmed the district court's judgment affirming the Commissioner of Social Security's denial of claimant's application for supplemental security income benefits under the Social Security Act.

At step three of the five-step sequence for evaluating disability claims, a claimant seeking supplemental security income benefits establishes a disability if he meets or equals a listed impairment. The claimant alleged that he medically equaled Listing 12.05C because his physical impairments were so severe that they compensated for the one-point difference between his IQ score and the score required under the Listing.

The panel held that the claimant was required to demonstrate that he medically equaled each of the individual criteria under Listing 12.05C, and concluded that he failed to do so.

### COUNSEL

Young Cho and Lawrence D. Rohlfing (argued), Law Offices of Lawrence D. Rohlfing, Santa Fe Springs, California, for Plaintiff-Appellant.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

André Birotte Jr., United States Attorney, Leon W. Weidman, Assistant United States Attorney, Chief, Civil Division, Francesco P. Benavides and Elizabeth Firer (argued), Special Assistant United States Attorneys, Social Security Administration, Office of the General Counsel, Region 9, San Francisco, California, for Defendant-Appellee.

**OPINION**

FISHER, Circuit Judge:

Richard Kennedy appeals an order of the district court affirming the decision to deny him supplemental security income benefits.  He argues that he equals the listed impairment for intellectual disability because his physical impairments are so severe that they compensate for the one-point difference between his recorded IQ score and the score required under the listing.  At the third step of the five-step sequence for evaluating disability claims, a claimant seeking supplemental security income benefits establishes a disability if he shows that he meets or equals a listed impairment. *See* 20 C.F.R. § 416.920(a)(4)(iii).  A claimant satisfies Listing 12.05C, demonstrating "intellectual disability" and ending the five-step inquiry, if he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. Kennedy, who has an IQ score of 71, acknowledges that he does not meet Listing 12.05C, but contends that he equals the listing.  We conclude that he does not.  A claimant must "present medical findings equal in severity to *all* the criteria for the one most

similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338–39 (S.D.N.Y. 2001). Kennedy did not show that his impairments *medically* equal an IQ score of 60 to 70, so he has not shown equivalence to *all three* individual criteria under Listing 12.05C, and his condition thus does not equal the listing. We affirm.

## BACKGROUND

In March 2008, Kennedy applied for supplemental security income benefits under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381–83f. He claims that he has been disabled since August 2004.

Kennedy testified before an Administrative Law Judge (ALJ) that he has dyslexia, never graduated from high school and was diagnosed with sickle cell anemia when he was two years old. He also testified that he takes several medications, has chronic pain in his left hip, legs, shoulders and back, and sometimes cannot see out of his left eye.

Medical records showed that Kennedy has an extensive history of sickle cell anemia and related issues, including avascular necrosis. One doctor wrote in March 2007 that Kennedy had "painful range of motion of the hips particularly the left side," but "[h]is pain level is not severe." Another doctor wrote in July 2008 that "[i]t is possible that the claimant does have some left hip problems and perhaps does need some surgical intervention," but "[h]e had full range of motion of the left hip," "ambulated overall with ease" and "overall appears to be in good physical condition." A psychologist who examined Kennedy in May 2008 found that

he had a verbal IQ score of 71, a performance IQ score of 78 and a full-scale IQ score of 72. The psychologist diagnosed Kennedy with "[g]eneralized anxiety disorder" and "[b]orderline mental retardation."

The ALJ evaluated Kennedy's application using the requisite five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a)(4). The ALJ determined at the first step that Kennedy was not engaged in substantial gainful activity and at the second step that Kennedy had severe impairments, including sickle cell anemia, avascular necrosis and osteoarthritis of the hips, and borderline intellectual functioning. At the *third step*, which is at issue here, the ALJ found that Kennedy "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." The ALJ specifically addressed Listing 12.05C and found that its requirements "are not met because [Kennedy] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

At the fourth and fifth steps, the ALJ found that Kennedy had no past relevant work but that he had a residual functional capacity that enabled him to perform a significant number of jobs in the national economy. The ALJ also noted "significant inconsistencies" between the medical records and Kennedy's testimony regarding the frequency of sickle cell crises, duration of hospital stays and severity of hip pain. Ultimately, the ALJ determined that Kennedy was not disabled for purposes of the Social Security Act.

The district court affirmed, ruling that Kennedy had "identified no alternative test or other medical findings that,

if evaluated, might lead to a conclusion of medical equivalence" to Listing 12.05C. Kennedy appeals the order of the district court affirming the Commissioner of Social Security's final decision denying him benefits.

## STANDARD OF REVIEW

"We review de novo a district court's order upholding a denial of social security benefits." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "On de novo review, the decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Id.*

## DISCUSSION

## I.

The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)–(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)–(v).

At the third step of the evaluation, a claimant's impairment or combination of impairments is *medically* equivalent to a listed impairment – establishing a disability and ending the five-step inquiry – if the claimant's impairment or combination of impairments "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Listing 12.05, which can be met or equaled at the third step, explains that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.[1] The listing further says that the level of severity for the intellectual disability impairment is met when any of four sets of additional requirements is satisfied. *See id.* The third of those four sets requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05C. Thus, Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation.

Kennedy raises just one issue on appeal. He concedes that he cannot meet Listing 12.05C because his IQ score for

---

[1] The "intellectual disability" impairment listed under § 12.05 was formerly referred to as "mental retardation." The substance of the listing has not changed.

purposes of the evaluation is 71.[2]  He argues, however, that he medically equals Listing 12.05C because his physical impairments are so severe that they compensate for the one-point difference between his IQ score and the score required under the listing.[3]  Although there is some facial appeal to his argument, it is foreclosed by the Supreme Court's decision in *Sullivan v. Zebley*, 493 U.S. 521 (1990).

## II.

*Zebley* held that, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (citing 20 C.F.R. § 416.926(a) (1989)).[4]  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*  The reason for this is clear.  Listed impairments are purposefully set at a high level of severity because "the listings were designed to operate as a

---

[2] Under 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c), "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."

[3] The parties have placed only the second element of Listing 12.05C in issue.  The parties do not appear to dispute that Kennedy meets or equals the first and third elements.

[4] Though the language of § 416.926(a) has changed since 1989, the regulation's substance has not been altered in a manner that casts doubt on *Zebley*'s continuing validity in this context.

presumption of disability that makes further inquiry unnecessary." *Id.* at 532. When a claimant meets or equals a listing, "he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Id.* Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered.

Since *Zebley*, we have followed this approach, requiring claimants to equal each criterion of Listing 12.05C rather than relying on overall functional impact. Specifically, in *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001), we held that a claimant offered no plausible theory for how his seizure disorder and "mental retardation" combined to equal Listing 12.05C when his IQ measured higher than 70, noting that the claimant "has shown no evidence that his seizures had even a temporary effect of lowering his IQ." *Id.* at 514. For instance, "[h]e might have argued that grogginess from his medications and seizures exacerbated the effect of his mental retardation, but the ALJ explicitly rejected Lewis's claim of grogginess." *Id.* In another case quite similar to the situation here, we considered the medical equivalency doctrine so well established that we affirmed the ALJ's finding of non-equivalency in a non-precedential disposition, holding that a claimant with an IQ over 70 did not show that she equaled Listing 12.05C:

> The ALJ perhaps could have found that appellant's other mental characteristics made her 74 or 72 IQ medically equivalent to a 70 IQ for purposes of getting and holding a job. But he did not. . . . The ALJ was not required to treat appellant's back problem as an

alternative to an IQ no higher than 70. The Appendix 1 § 12.05(C) language is "IQ of 60 through 70 *and* a physical or other mental impairment" (emphasis added). So both are needed. . . .

. . . Because equivalence is considered "based on medical evidence only," the practical equivalence in the job market of being only a little brighter than the IQ ceiling and also having a back problem is not the kind of equivalence to which the regulation refers. The ALJ could permissibly find on the record as a whole, and did, lack of equivalence, because the record allowed for the conclusion that appellant's intelligence was not medically equivalent to an IQ no higher than 70.

*Brouse v. Chater*, 161 F.3d 11, 1998 WL 567964, at *2 (9th Cir. Aug. 25, 1998) (unpublished) (citation omitted).

Similarly, Kennedy has not advanced an argument or offered evidence for equaling Listing 12.05C that conforms to *Zebley*. He argues only that his severe physical impairments related to sickle cell anemia compensate for his failure to meet the IQ requirement, not that either his IQ score or his intellectual functioning was effectively lower than the recorded 71 because of other impairments. Kennedy argues the overall functional impact of his impairments, but he has not demonstrated that he medically equals the IQ criterion of Listing 12.05C. His arguments would be relevant at the fourth and fifth steps of the disability evaluation, but not at the third step, where equaling a listing serves as a presumption of disability and automatically ends the inquiry.

Kennedy, however, has not challenged the ALJ's fourth and fifth step findings as issues on appeal.

**III.**

Kennedy contends that his interpretation of equivalence is consonant with the Social Security Administration's own guidelines, and that the Commissioner's interpretation is not. The Social Security Administration's Program Operations Manual System (POMS) states:

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS DI 24515.056 (2010). We have held that "POMS may be 'entitled to respect' under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation, but it 'does not impose judicially enforceable duties on either this court or the ALJ.'" *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) (citations omitted) (quoting *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010)).

Regardless, POMS favors neither Kennedy's interpretation nor the Commissioner's interpretation. The guideline's notion that equivalence may be supported by an IQ score slightly higher than 70 and "other physical or mental disorders that impose additional and significant work-related limitation of function" is ambiguous as to whether a claimant must show equivalence to the individual IQ prong itself. POMS does not explicitly say that a claimant need not demonstrate medical equivalence with respect to each component of Listing 12.05C, including the requisite IQ range. Even if we were to attribute significant weight to POMS, it would not rule out the interpretation that a claimant is required to demonstrate that his IQ score – which, under the guidelines, could be in the 71 to 75 range – is medically equivalent to the requisite score of 60 to 70. We acknowledge that POMS is confusing, so we give it little weight and rely instead on the principles established by *Zebley*.

Kennedy also urges that the ALJ inadequately addressed his evidence of equivalency to Listing 12.05C. "[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Lewis*, 236 F.3d at 513. Moreover, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d

676, 683 (9th Cir. 2005). Here, the ALJ adequately addressed the third step of the evaluation, given that Kennedy never presented evidence or advanced an argument for equivalency that conformed to *Zebley*. The ALJ appropriately addressed the issues that Kennedy raised and determined that Kennedy did not meet or equal any listing.

## CONCLUSION

Following *Zebley*, we hold that Kennedy was required to demonstrate that he medically equaled each of the individual criteria under Listing 12.05C and failed to do so.

**AFFIRMED.**