**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

DEC 23 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROSE NIELSEN, | No. 23-35619 |
| Plaintiff-Appellant, | D.C. No. 2:22-cv-00218-TOR |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted December 2, 2024
Seattle, Washington

Before: W. FLETCHER, BERZON, and R. NELSON, Circuit Judges.
Dissent by Judge R. NELSON.

Rose Nielsen appeals the district court's affirmance of the denial of her social

security disability applications. We reverse and remand.

1. An administrative law judge (ALJ) may only reject a medical opinion as

"unsupported or inconsistent" with the record if the ALJ "provid[es] an explanation

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ's findings must be "supported by inferences reasonably drawn from the record" as a whole, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); the ALJ may not "pick out a few isolated instances of improvement" to support the denial of benefits, *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here, the ALJ rejected or failed to consider, in whole or in part, four medical opinions that identified significant limitations in Nielsen's ability to work. None of the conclusions about these opinions were supported by substantial evidence.

a. Examining psychologist Dr. Islam-Zwart and treating clinician Welde assessed Nielsen as markedly to severely impaired in various work-related functions. The ALJ rejected both opinions as "inconsistent with the remainder of the medical evidence." To support his conclusion, the ALJ cited several pieces of evidence that characterized Nielsen's cognitive function as normal or intact. But Nielsen sought disability benefits due to her behavioral health issues, not a cognitive deficit.

In discrediting Dr. Islam-Zwart and Welde's opinions, the ALJ also cited to numerous non-psychological medical records. That non-mental health professionals did not remark on Nielsen's "mental health symptoms" or observed that her cognitive function or affect seemed normal "says little about the extent to which [Nielsen] may in fact have been suffering from such symptoms." *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017).

Further, although there were isolated instances in which Nielsen reported feeling relieved, optimistic, or positive, there was also a significant volume of medical evidence corroborating Dr. Islam-Zwart and Welde's opinions. "Cycles of improvement and debilitating symptoms" are "common" in mental health conditions, and "in such circumstances it is error for an ALJ to . . . treat [isolated instances of improvement] as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

The ALJ also concluded that Welde's opinion was "not supported" because it was "merely a check mark type form." But Welde's "check-box form[] did not stand alone: [it] reflected and w[as] entirely consistent with . . . pages of treatment notes" that she had produced. *Id.* at 1014 n.17.

Considering the "record as a whole," *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014)), substantial evidence does not support the ALJ's conclusion that Dr. Islam-Zwart and Welde's opinions were "inconsistent with the remainder of the medical evidence."

b. Psychologist Harmon, a state consultant, reviewed Dr. Islam-Zwart's disabling assessment. Dr. Harmon concluded that Dr. Islam-Zwart's diagnosis was supported by available objective medical evidence and that the severity and functional limitations that Dr. Islam-Zwart reported were supported by available medical evidence in her report.

The ALJ did not mention or consider Dr. Harmon's report. An ALJ need not "discuss evidence that is neither significant nor probative" where it is duplicative of another piece of evidence that the ALJ does discuss. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). But there was no duplication here. Dr. Harmon's report independently weighed the validity of Dr. Islam-Zwart's report and affirmed her conclusions, with some explanation. Dr. Harmon's analysis was "significant" to and "probative" of the persuasiveness of Dr. Islam-Zwart's assessment, an assessment which the ALJ had otherwise rejected. The ALJ erred in failing to discuss Dr. Harmon's opinion.

c. The ALJ credited Dr. Andersen's medical opinion as "generally persuasive," but found that there was "no supporting evidence" for her determination that Nielsen's ability to maintain regular attendance in the workplace would be markedly impaired. But Dr. Andersen based her attendance assessment on Nielsen's "mood symptoms," which Dr. Andersen observed firsthand, and Nielsen's "tendency to isolate," which was based on Nielsen's report that Dr. Andersen credited. As Dr. Andersen's determination about marked attendance impairment was supported by *some* "objective medical evidence" (*i.e.,* her professional observation of Nielsen's mental state) and "supporting explanation[]," the ALJ erred in concluding that this part of Dr. Andersen's opinion was unsupported. *See* 20 C.F.R. § 404.1520c(a), (c)(1).

4

2. "[S]ubstantial evidence does not support an ALJ's RFC [residual functional capacity] assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). An ALJ may reject the claimant's symptom testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014–15).

Although the ALJ properly dismissed Nielsen's physical symptom testimony, he failed to provide "specific, clear and convincing reasons" for discounting her psychological symptom testimony. First, the ALJ discredited Nielsen's psychological testimony largely based on mental exams reflecting normal cognitive function. But again, Nielsen has consistently framed her psychological disability through the lens of "mood and affect"—the area in which the ALJ acknowledged that Nielsen had "clinically observable symptoms." The ALJ failed to explain why normal cognitive health indications undermine Nielsen's testimony about her behavioral health issues. *Cf. id.* at 1201–02.

Second, to the extent the ALJ references positive or neutral mood indications in Nielsen's medical record, those references do not provide "clear and convincing" reasons for discounting her symptom testimony. The ALJ's decision notes that, on one occasion, Nielsen scored insignificantly on a depression questionnaire, and, on

5

another occasion, she reported feeling relieved and optimistic after learning that she did not have lung cancer and then spending time with her child and grandchildren. But overwhelmingly, Nielsen scored high on depression and anxiety questionnaires; her insignificant score was an outlier. And just days after the visit where Nielsen reported relief and optimism, a mental health provider assessed Nielsen with recurrent depression with psychosis based on her consistent panic, suicidal ideations, and hallucinations.

"[W]hile discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. Here, "[r]ather than describe [Nielsen's] symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [Nielsen]. While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Id.* at 1018. Citing an outlier survey result or a brief moment of psychological reprieve does not meet this standard.

In sum, the ALJ's decision to discount Nielsen's psychological symptom testimony was not supported by substantial evidence, as he failed to articulate specific, clear and convincing reasons for doing so.

3. As to Step Five of the sequential disability benefits analysis, the ALJ asked the vocational expert a hypothetical about an individual who could perform "light" work with specific limitations. The expert stated that none of the jobs such an individual could perform in the economy would accept a person missing "four days of work per month due to mental impairments."

In his decision, the ALJ concluded that Nielsen would be "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Had the ALJ properly credited the contested medical evidence and psychological symptom testimony, he would have had to conclude that Nielsen would miss more than four days of work per month due to her mental impairments, and so, in accord with the expert's testimony, her level of absenteeism would preclude employment. The ALJ's Step Five conclusion therefore cannot stand.

In light of these various errors, we reverse and remand with instructions that the district court remand to the Commissioner for proceedings consistent with this disposition.

**REVERSED AND REMANDED.**

*Nielsen v. Colvin*, No. 23-35619

R. NELSON, J., dissenting:

I would affirm the denial of Rose Nielsen's social security disability applications.

1.      The ALJ found that several medical opinions—including those of Dr. Islam-Zwart, Dr. Welde, Dr. Harmon, and, in part, Dr. Andersen—conflicted with the rest of the evidence. *See* 20 C.F.R. § 404.1520c(c)(2). Accordingly, the ALJ rejected those opinions, and that decision was supported by substantial evidence.

Although the majority characterizes the positive mental health evaluations as "isolated instances," Maj. at 3, the ALJ enjoys significant leeway in choosing among rational interpretations of the evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). That includes the interpretation that those evaluations were not, in fact, isolated instances. The substantial-evidence review standard is baked into the statutory design of our judicial review of the denial of social security benefits, and ultimately demands only "more than a mere scintilla" of evidence. *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)); 42 U.S.C. § 405(g).

And Nielsen's own denial of suicidal tendencies—coupled with these other positive mental health evaluations showing euthymic presentation and no

1

expressed anxiety—constitute more than a mere scintilla of evidence. What's more, the ALJ's denial of benefits is justified by the findings of Dr. Haney and Dr. Forsyth, who supported their findings with specific evidence. So the ALJ's decision to discount each of certain medical experts was supported by substantial evidence, and any failure to discuss Dr. Harmon's opinion separately was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).

The ALJ relied in part on non-psychological medical records in rejecting these medical opinions. But it is not the case that "non-mental health professionals did not remark on Nielsen's 'mental health symptoms' or observed that her cognitive function or affect seemed normal." Maj. at 2–3 (quoting *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017)). Instead, the ALJ relied on those records because Nielsen affirmatively represented that she was not suicidal and was not experiencing suicidal ideation. As a result, these records are unlike those in *Diedrich* and provide substantial evidence in support of the ALJ's inconsistency determination.

2. For much the same reasons, the ALJ properly rejected Nielsen's symptom testimony as inconsistent with the other evidence in the record and offered clear and convincing reasons for doing so. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024); 20 C.F.R. § 404.1529(c)(2)–(3). That is, the ALJ "show[ed] their work." *Ferguson*, 95 F.4th at 1199 (quoting *Smartt v. Kijakazi*, 53

2

F.4th 489, 499 (9th Cir. 2022) (brackets removed)).  The ALJ points to evidence of multiple psychological evaluations that show no depression and suggest euthymic affect and unremarkable thought content, all in addition to the above instances where Nielsen affirmatively denied suicidal ideation.  That is enough, as "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt*, 53 F.4th at 499 (quoting *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)).

3.     And because the ALJ did not err in rejecting Nielsen's symptom testimony and unpersuasive medical opinions, the step-five determination that Nielsen could perform other work at step five of the sequential disability analysis was not erroneous.

I respectfully dissent.